UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | 4:14CR393 ERW/DDN |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN PALUCH, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF UNCHARGED MISCONDUCT**

**Introduction**

In this action, the United States seeks to convict Brian Paluch, the former Chief Financial Officer ("CFO") of PARIC Corporation ("PARIC" or the "Company"), on three counts of mail fraud. The first focusses on Paluch's alleged use of $5,000 of PARIC funds as an incentive payment to McCarthy, Leonard & Kaemmerer ("MLK"), a St. Louis law firm, in exchange for hiring Paluch's niece as a summer associate. Indictment, ¶¶ 8-9. The second and third allege that Paluch used a Company American Express ("AMEX") card for personal expenses. *Id.* at ¶¶ 4, 10-11. Paluch's analysis reveals that these two counts involve approximately $9,000. Thus, the alleged financial impact of all the charged offenses is approximately $14,000.

Nonetheless, the government claims that Paluch's "scheme" to defraud sought to obtain approximately $150,000 from PARIC. The vast majority of the conduct on which the government intends to rely in showing the more than $136,000 *in excess of the offenses actually charged* has no connection whatsoever with the alleged incentive payment or Paluch's misuse of

1

his AMEX card. The government's obviously strategic intent is avoid having to prove this uncharged misconduct beyond reasonable doubt. Rather – even though it wholly eclipses evidence of the offenses charged – the government wishes to present it to the jury under a preponderance standard. If allowed to do so, such evidence will become the proverbial "tail which wags the dog." *United States v. Fortenberry*, 860 F.2d 628, 632 (5th Cir. 1988).

### Conduct Alleged in the Indictment

Count I of the Indictment accuses Paluch of using PARIC funds to pay $5,000 to MLK as an "agreed upon bonus." Indictment, ¶ 9. But rather than being a bonus to the firm, the government alleges that it was an "incentive payment" that Paluch promised to MLK in exchange for hiring Paluch's niece as a summer associate. *Id.* Counts II and III allege that on December 1, 2011 and December 13, 2013, respectively, Paluch used a PARIC AMEX card for one or more personal expenses. *Id.* at ¶¶ 10-11. In its prefatory paragraphs, the Indictment contends that Paluch did so by making personal charges to the AMEX card and authorizing an employee to pay the bills via AMEX's telephone billing system. *Id.* at ¶ 4. The Indictment contends that Paluch submitted false financial summaries altering or deleting the personal charges and, on occasion, forged PARIC's president's signature as authorization for the charges. *Id.*

The uncharged conduct alleged in the remaining paragraphs of the Indictment, and the evidence that those paragraphs indicate the government will seek to use at trial, have nothing to do with the conduct and crimes alleged in Counts I – III. Paragraph 5 contends that Paluch inflated charges made at the Sunset Country Club and created false invoices, all of which he caused PARIC to pay. *Id.* at ¶ 5. The government alleges that the excess amounts paid to the country club were credited to Paluch's personal account. *Id.* Paragraph 6 of the Indictment

2

alleges that Paluch inflated his base salary in calculating his annual bonus, causing the bonus to be falsely inflated. Paragraph 7 contends that Paluch authorized a PARIC employee to pay for her daughter's school with Company funds and falsified accounting records to reflect that the payments were donations. *Id.* at ¶ 7.

The government contends that the amount Paluch wrongfully obtained through the charged conduct is approximately $15,000. The government contends that the amount Paluch wrongfully obtained through this *uncharged* misconduct is approximately $136,000. Inescapably, the trial will be dominated by the government's presentation of uncharged misconduct evidence under a preponderance standard. Not only will this confuse the jury regarding the matters actually at issue and whether they must be proven beyond a reasonable doubt, but also threatens to lead the jury to convict based upon conduct having no bearing upon the offenses charged.

**Argument**

While admissible for other purposes, "evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). Here, the vast majority of the government's case focusses on conduct other than that with which it has charged Paluch. Paluch anticipates that that the government will seek to admit this evidence under Rule 404(b)(2)'s exception to 404(b)(1)'s rule of exclusion, contending that it may be relevant to issues other than Paluch's alleged criminal propensity. But even if the government tenders it on that basis, the evidence should be excluded under Rule 403 because its probative value is far outweighed its danger of unfair prejudice. *U.S. v. Harvey*, 845 F.2d 760, 762-63 (8th Cir. 1988); *U.S. v. Fortenberry*, 860 F.2d 628, 632-33 (5th Cir. 1988).

3

In *Fortenberry*, the court overturned the conviction of a defendant charged with conspiring to commit arson and two firearms charges because the trial was dominated by evidence of external offenses. *Fortenberry*, 860 F.2d at 632-33. While Fortenberry was charged with placing a small explosive device in an unoccupied car, which did little damage to the car, "[t]he jury heard extensive testimony extensive testimony concerning three attacks with crossbow arrows, one of which nearly struck a two-year old child; three incidents of arson accounting for thousands of dollars in damage; and an act of vandalism with a .22 caliber rifle." *Id.* at 632.

While the government argued that the prior crimes evidence established a pattern of activity, the court held that its admission was reversible error because the evidence was highly prejudicial and "of a magnitude far greater than the charged offenses. In addition, [it] occupied more of the jury's time than the evidence of the charged offenses." *Id.* The court concluded that "[i]n terms both of time in the courtroom and capacity to impress the jury, this tail wagged the dog." *Id.*

*Fortenberry*'s reasoning applies directly here. The Indictment, and the materials the government has produced, indicate that the trial will focus primarily on the minutiae of chits from Paluch's country club account over several years, PARIC's compensation and bonus program, and alleged tuition payments for a PARIC employee's child. The amount of money at issue makes this even more clear. Were the government primarily to present evidence of the offenses charged, it could show only approximately $14,000 of proceeds from the alleged fraudulent scheme. The uncharged misconduct dwarfs this amount. It is of far greater magnitude than charged offenses and will occupy a largely disproportionate amount of the jury's time and attention.

4

Worse yet, by focusing on uncharged misconduct, the government strategically seeks to dilute its burden of proof from the criminal standard under which it must prove the charged offenses and to a preponderance standard under which it will tender these collateral matters.  At the same time, the government's focus effectively shifts the burden to Paluch to prove that he did not commit uncharged conduct at the peril of being convicted for it, rather than for the offenses charged.  *See United States v. Mohel*, 604 F.2d 748, 751 (2d Cir. 1979).

Simply stated, the government's case, as indicated in the Indictment and the documents provided, will be dominated by uncharged conduct tendered under a preponderance standard. The magnitude and alleged financial impact of this uncharged conduct will occupy far more of the jury's time and attention than the offenses charged.  It is unfairly prejudicial and must be excluded.

If the government wishes to convict Paluch of three counts of mail fraud, with an alleged impact of $14,000, it should do so with evidence that he actually committed the offenses charged.  But this case is not about whether Paluch committed mail fraud.  It is about retaliation against Paluch by Joe McKee, PARIC's President and CEO, and the government's willing participation in that retaliation.  In July 2013, Paluch confronted McKee regarding PARIC's diversion, at McKee's instruction, of approximately six million dollars of other otherwise taxable revenue to McKee family-related businesses.  Rather than even considering – as Paluch urged – taking steps to remedy this tax fraud, McKee's response was to retaliate against Paluch and seek discredit him. To that end, McKee commenced an "investigation" with the goal of crafting contrived accusations that McKee had defrauded PARIC.

The government's charges are the culmination of McKee's efforts.  The Postal Inspector and the U.S. Attorney uncritically accepted McKee's misleading accusations, superficially

5

conducted their own inquiry, and had every incentive to be misled.  McKee is the owner of 200 parcels of land that the city of St. Louis and the federal government have been, and are, negotiating to purchase in an effort to provide a site for National Geospatial-Intelligence Agency.  The Agency provides more than 3,000 jobs, with an average salary of $75,000, to the St. Louis area.  Retaining it is a critical goal of city, state and federal officials.  An investigation and prosecution of McKee for tax fraud would undermine that effort.  In turn, orchestrating the downfall of McKee's potent critic promotes it.

The government's ulterior political motive of silencing and discrediting Paluch is no substitute for proof of the crimes charged based upon a good faith investigation.  Both are lacking here.

## Conclusion

For all the foregoing reasons, Defendant Brain Paluch respectfully requests that the Court grant this Motion in Limine, exclude from the trial all evidence of uncharged misconduct, and grant whatever additional relief it deems appropriate.

Respectfully Submitted,

COSGROVE LAW GROUP, LLC

 /s/ David B. Cosgrove
David B. Cosgrove MO Bar # 40980
Daniel V. Conlisk MO Bar # 36544
Pierre Laclede Tower II
7733 Forsyth Blvd., Suite 1675
St. Louis, Missouri 63105
Telephone: (314) 563-2490
Facsimile: (314) 968-7371
E-mail:dcosgrove@cosgrovelawllc.com
          dconlisk@consgrovelawllc.com

*Attorneys for Defendant*

6

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 28th day of July, 2015, I electronically filed the foregoing with the Clerk of the United States District Court for the Eastern District of Missouri by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


                   /s/ David B. Cosgrove