UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:14CR393 ERW/DDN |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN PALUCH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION IN LIMINE TO EXCLUDE PROFFER EVIDENCE AND**
**PRE-TRIAL SERVICES EVIDENCE FROM THE GOVERNMENT'S CASE-IN-CHIEF**

**INTRODUCTION**

In this action, the United States seeks to convict Brian Paluch ("Paluch") of mail fraud based upon his allegedly improper practice of designating certain PARIC credit card charges as business expenses on company internal reimbursement forms when, the government claims, the charges were incurred for non-business purposes, and for allegedly bribing a law firm to hire his niece as a summer associate. Paluch has maintained his innocence throughout this case. He has, twice, participated in separate proffer sessions with the Government, each governed by proffer agreements in which the government agreed not to use any statements made or information provided by Paluch against him, subject to certain exceptions that are inapplicable here. Following his indictment, Paluch was interviewed on multiple occasions by pre-trial services officers regarding his pretrial release.

None of the statements made by Paluch in the proffer sessions or the pre-trial services interviews can be utilized by Government in its case-in-chief. Rule 410 of the Federal Rules of Evidence provides that statements made during the course of plea negotiations are inadmissible

against the defendant. While Paluch entered into so-called "proffer agreements" with the Government, he did not fully relinquish his rights under Rule 410 because the Government expressly agreed not to use any statements made or information provided by Paluch in any criminal case against him during the Government's case in chief. Any statements made or information provided by Paluch during his interviews with pre-trial services are similarly inadmissible under 18 U.S.C. § 3153, which classifies such information as confidential and expressly inadmissible on the issue of a defendant's guilt.

Accordingly, Paluch's Motion in Limine to Exclude Proffer Evidence and Pre-Trial Services Evidence from the Government's Case-in-Chief should be granted.

## ARGUMENT

**1. Statements made by Paluch during proffer sessions are inadmissible under the Federal Rules and the Government's Proffer Agreements with Paluch**

Rule 11(f) of the Federal Rules of Criminal Procedure provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statements is governed by Federal Rule of Evidence 410." Fed.R.Crim.P. 11(f). Under Rule 410, "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is not admissible "against the defendant who made the plea or was a participant in the plea discussions." Fed.R.Ev. 410(4); *see also United States v. Quiroga*, 554 F.3d 1150, 1154 (8th Cir. 2009)("Under Rule 410, statements made in the course of plea negotiations are inadmissible against the defendant.").

The Eighth Circuit has recognized that the protections of Rule 410 are "waiveable by agreement, unless there is some affirmative indication that the agreement was entered into unknowingly or involuntarily." *Quiroga* 554 F.3d at 1154 (internal quotations and citations omitted). In this case, Mr. Paluch participated in two separate proffer sessions with the

2

Government, each of which were governed by separate proffer agreements that limited the Government's ability to use the information from the proffer discussions against Mr. Paluch.

On June 25, 2014, Paluch and his counsel met with Inspector M.J. Villicana, Special Agent Monique Comeau, and Assistant United States Attorney Hal Goldsmith to proffer a statement regarding the criminal allegations made by PARIC to the United States Attorneys Office.  The agreement governing this discussion is a "Proffer Letter" authored by Mr. Goldsmith and an "Acknowledgment and Agreement" executed by Mr. Paluch (the "2014 Proffer Agreement").  The Proffer Agreement is attached hereto as **Exhibit A**.  Under the terms of the 2014 Proffer Agreement, the Government agreed that "no statements or information provided by [Mr. Paluch] during the proffer or discussion will be used against [Mr. Paluch] in any criminal case during the government's case in chief."  *Id.*[1]

On June 30, 2015, Paluch, with his counsel, attended a second proffer session during which he provided the Government information regarding PARIC's President and CEO, Joe McKee, causing PARIC's to improperly divert approximately six million dollars of other otherwise taxable revenue to McKee family-related businesses.  The June 30, 2015 proffer session was governed by another proffer agreement (the "2015 Proffer Agreement"), which, again, restricted the government's ability to use statements and information provided by Mr. Paluch during the session against him.   The 2015 Proffer Agreement is attached hereto as **Exhibit B**.  Under the terms of the 2015 Proffer Agreement, the government agreed that "any statements made [in the proffer] will not be used as the basis for additional prosecution against

---

[1] The 2014 Proffer Agreement also provides that Government may use statements or information from the proffer session to (a) cross-examine Mr. Paluch if he offers testimony "<u>materially different</u>" from any statements made during the proffer session; or (b) "rebut evidence or arguments <u>materially different</u> from any statements made or information provided by [Mr. Paluch]." *See* Ex. A.  However, these clauses are not at issue here.

3

you by the Government so long as you have told the truth." Ex. B at 1.  Furthermore, the 2015 Proffer agreement provides that the Government may only cross-examine Mr. Paluch about any statements made or information provided during the June 30, 2015 proffer session, if he offers "testimony <u>materially different</u>" from any statements made or other information provided during the interview." *Id*. at 2.

Accordingly, pursuant to Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, and the terms of the 2014 Proffer Agreement and the 2015 Proffer Agreement, the Court should preclude the Government from introducing any evidence regarding Paluch's statements made or information he provided during the proffer sessions during its case-in-chief or otherwise during the trial.

2. **Evidence regarding Paluch's pre-trial services interview are inadmissible under 18 U.S.C. § 3153.**

To the extent that the government will seek to introduce evidence at trial, including statements, photographs, or other information made or obtained from Mr. Paluch in connection with his cooperation with pre-trial services, the Court should preclude the Government from introducing such evidence in its case-in-chief.

Under 18 U.S.C. § 3153(c)(1), "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purpose of bail determination and shall otherwise be confidential."  The statute further provides that such confidential information "is not admissible on the issue of guilt in a criminal judicial proceeding." 18 U.S.C. § 3153(c)(3).  The only exception to the statute's general rule of inadmissibility is for "a prosecution for a crime committed in the course of obtaining pretrial

4

release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided." *Id.*[2]

Following his indictment, Paluch was interviewed by a pre-trial services officer on or around December 12, 2014 to determine whether Paluch should be released or detained pending trial.  Subsequently, on June 26, 2015, pre-trial services officer William Irby interviewed Paluch at Paluch's residence and took seven photographs of Paluch's basement, purportedly because Mr. Irby liked how Paluch's basement was arranged.  Whatever, the reason for the photographs, they and any statements made at any time by Paluch in connection with pre-trial services are inadmissible on the issue of his guilt regarding the allegations alleged in the Indictment.  *See* 18 U.S.C. § 3153(c).

Accordingly, the Court should enter an order prohibiting the Government from introducing any evidence regarding Mr. Paluch's pretrial services in its case-in-chief.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Brian Paluch's Motion in Limine to Exclude Proffer Evidence and Pre-Trial Services Evidence from the Government's Case-in-Chief.

---

[2] The Eighth Circuit has found that information obtained from pretrial services may be used for the limited purpose of impeachment.  *See United States v. Wilson*, 930 S.W.F.2d 616, 619 (8th Cir. 1991).  However, it has also expressed concern that "the congressional intent as expressed in the confidentiality requirement may be transgressed when the government uses information obtained during the pretrial services interview for purposes unrelated to pretrial detention or release."  *United States v. McLaughlin*, 777 F.2d 388, 392 (8th Cir. 1985).  In any event, this is question is not at issue here.

5

Respectfully Submitted,

COSGROVE LAW GROUP, LLC

 /s/ David B. Cosgrove
David B. Cosgrove MO Bar # 40980
Daniel V. Conlisk MO Bar # 36544
Pierre Laclede Tower II
7733 Forsyth Blvd., Suite 1675
St. Louis, Missouri 63105
Telephone: (314) 563-2490
Facsimile: (314) 968-7371
E-mail:dcosgrove@cosgrovelawllc.com
dconlisk@consgrovelawllc.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July, 2015, I electronically filed the foregoing with the Clerk of the United States District Court for the Eastern District of Missouri by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ David B. Cosgrove