UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:14-cr-00393-ERW |
| BRIAN PALUCH, | ) ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S TRIAL BRIEF**

The United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and John J. Ware and Dianna R. Collins, Assistant United States Attorneys for said District, submits its Trial Brief.

I.  FACTS

In approximately 2007, Paric Corporation (Paric), a large construction firm, located in St. Louis, hired defendant Paluch as Chief Financial Officer (CFO).  As CFO, defendant was ultimately responsible for all accounting aspects of Paric.  Later, defendant was made an officer of the company and promoted to Executive Vice President, but maintained his CFO responsibilities.  In late 2010, Joe McKee, the owner of Paric, promoted another vice-president to the role of president, disappointing defendant's hopes in the process.  The relationship between McKee and defendant began to deteriorate from that point.  Defendant's combative temperament also began to surface with other Paric employees and in early 2014 he was fired.  Subsequently, Paric commissioned an audit of the company, which discovered that defendant had been misappropriating funds from the firm.  Law enforcement was contacted and an investigation was initiated by the Federal Bureau of Investigation and U.S. Postal Service.

The investigation discovered that defendant misappropriated funds from Paric as early as January 2010. Primarily, defendant utilized a Paric American Express card issued to him for company business, to pay for personal expenses. To cover the inappropriate spending, defendant created false monthly summaries regarding his Paric American Express charges. Defendant then submitted the false summaries for countersign authorization per company policy. On some occasions, defendant went so far as to forge the signature of the Paric president to obtain authorization.

While defendant's defrauding of Paric was consistent, the Indictment charges two specific false monthly summaries. On December 1, 2013, American Express mailed the monthly billing statement as to defendant's Paric charge card for the period of 10/28/13 to 11/28/13 (Count III). In that time frame, defendant charged a total of $23,573.73 on the company card. Among those charges were several personal expenses including charges at restaurants, women's clothing store, and Walgreens for the purchase of gift cards. Among the legitimate business expenses were charges to Waterway in aggregate of $8,858.20. These charges included renewal for yearly memberships for Paric employees. However, in the monthly summary prepared by defendant for authorization, he listed Waterway charges at $12,575.00. Defendant also attached a manufactured summary receipt that purportedly verifies the $12,575.00 charge. The $3,716.80 discrepancy between the actual Waterway charge and that which defendant falsely submitted is nearly equivalent to the personal charges accrued during the month to which defendant could not, and did not, submit for reimbursement ($3,716.22).

Similarly, American Express mailed on December 1, 2011 (Count II) the monthly billing statement as to defendant's company card for the period of 10/28/11 to 11/28/11. In that time frame, defendant charged a total of $29,889.16 on the company card. Among those charges were

2

many personal expenses including purchases of wine from several vineyards on a personal trip to Napa Valley, restaurant bills, gift cards, and computers.  However, in the monthly summary prepared by defendant for authorization, he claimed that these expenses were for company purposes, either as donations, customer entertainment, or company projects when in fact they were not.

Incidentally, one of the legitimate charges included on this billing was the renewal of yearly memberships for Paric employees at Waterway for a total of $8,348.90; further illustrating defendant's fraudulent scheme regarding Waterway in 2013.

In addition, defendant claimed on his monthly summary a $5,680.23 charge from Omaha Steaks which he labeled as customer holiday gifts.  However, the actual American Express bill has no such charge and Omaha Steaks has no record of the charge.  Not coincidentally, that manufactured charge equates nearly equally to the personal expenses defendant placed on his company card for which he did not seek reimbursement.

Another way defendant misappropriated Paric funds for his own personal benefit involved obtaining a summer internship for his niece at a St. Louis law firm in 2011.  The law firm of McCarthy, Leonard had been retained by Paric on a number of matters for many years past. Defendant approached one of the partners about a summer position for his niece, but was told that the firm's summer intern position had already been filled.  Defendant then offered to pay the firm $5,000.00 to take on his niece for the summer.  The firm, believing this offer had company approval, agreed.  The firm billed Paric for an "Agreed Upon Bonus."  The firm mailed the bill to defendant on or about July 22, 2011 (Count I), who paid it without alerting anyone in the company as to its true purpose.

## II.  LEGAL ISSUES

ELEMENTS OF OFFENSE

1.      Mail Fraud

The essential elements of a violation of mail fraud are that the defendant perpetrated (1) a scheme to defraud; (2) with intent to defraud; (3) while using the United States Postal Service ("USPS") or a private interstate commercial carrier in furtherance of the scheme.  Neder v. United States, 527 U.S. 1, 20-25 (1999).  The Fifth Circuit has asserted that the following reasonably defines fraud:

> [F]raud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right; a false representation of a matter of fact whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed which deceive and is intended to deceive another so that he can act upon it to his legal injury. United States v Meadows, 598 F.2d 984, 987 (5th Cir. 1979).

The scheme prong of mail fraud is met when there is a finding that a scheme to defraud existed in which it was reasonably foreseeable that someone would use mail service and that there was an actual mailing in furtherance of that scheme.  For example, an insurance scam in which the defendant should have foreseen that the mail service would be used to deliver a check meets this requirement.  United States v. Crossley, 224 F.3d 847, 857 (6th Cir. 2000).  A "scheme" under the federal mail fraud should also fit the common law definitions of fraud; consequently, a scheme should include a material misrepresentation.  Neder, 527 U.S. at 20-25.  The Neder Court defined "materiality" as when:

> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker or the representation knows or has reason to know that its recipient regards or is likely to regard the

4

> matter as important in determining his choice of action, although a reasonable man would not so regard it. Id. at 22 n.5 (quoting RESTATEMENT (SECOND) OF TORTS § 538 (1977)).

A defendant makes a false or fraudulent statement/representation when he intentionally makes an untrue statement or effectively conceals a material fact. But in order to be a false statement, it needs to be purposely incorrect and the person furnishing the information must know that the statement is untrue when he furnishes it. United States v. Olson, 576 F.2d 1267, 1272 (8th Cir. 1978). "The critical inquiry is not whether [the defendants] intended to break the law, but, rather whether [they] intended to defraud [the insurance companies]." United States v. Wicker, 80 F.3d 263, 267 (8th Cir. 1996) (quoting United States v. Costanzo, 4 F.3d 658, 664 (8th Cir. 1993)). This can include misrepresentations that prompt people to turn over property to the defendants. Id.

Because intent is sometimes an ambiguous and difficult element to prove, "a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent." United States v. Copple, 24 F.3d 535, 545 (3d Cir. 1994). For example, a defendant's use of intermediaries to conceal his role can establish the defendant's intent to defraud. United States v. Gray, 105 F.3d 956, 965-66 (5th Cir. 1997). Also, omissions and failures to report information, that a normal person would expect to be reported, meet the intent requirement. United States v. Richman, 944 F.2d 323, 333 (7th Cir. 1991). Moreover, fraudulent intent can be inferred from the scheme when the necessary result of the defendant's act is to injure others. United States v. Fernandez, 282 F.3d 500, 507 (7th Cir. 2002).

"The crime of mail fraud is broad in scope." United States v. Bishop, 825 F.2d 1278, 1280 (8th Cir. 1987). Evidentiary latitude in proving the scheme to defraud is very broad. It has long been established that the jury may consider the totality of defendant's conduct in the

5

scheme. United States v. Anderson, 447 F.2d 833, 836 (8th Cir. 1971). Even actions that obfuscate the crime, make apprehension less likely, or give a false sense of security to the victim are considered part of the scheme to defraud. United States v. Solomonson, 908 F.2d 358, 363 (8th Cir. 1990). And of course, proof of defendant's personal expenditure of Paric corporate funds is admissible to prove the scheme to defraud. United States v. Brickey, 426 F.2d 680, 685 (8th Cir. 1970).

A scheme to defraud does not need to be successful in order to be a violation. Durland v. United States, 161 U.S. 306, 315 (1896); see also United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000) (explaining that intent to defraud does not require success because the statute seeks to punish the scheme—not its success). However, the scheme should be reasonably calculated to deceive someone of ordinary prudence and understanding. United States v. Paneras, 222 F.3d 406, 410 (7th Cir. 2000).

Any use of the USPS for mail fraud fits within federal jurisdiction; so, even intrastate correspondence is in the federal courts' authority. United States v. Elliott, 89 F.3d 1360, 1364 (8th Cir. 1996). The defendant need not actually mail or receive mail himself. Pereira v. United States, 347 U.S. 1, 8 (1954); United States v. Swan, 250 F.3d 495, 500 (7th Cir. 2001). Instead, the defendant simply must have caused the mail service to be used and reasonably foreseen that the mail service would be used. United States v. Fore, 169 F.3d 104, 109 (2d Cir. 1999); United States v. Hartsel, 199 F.3d 812 (6th Cir. 1999).

The mailing must also further the fraud committed by the defendant. But this mailing need only be "incident to an essential part of the scheme." Schmuck v. United States, 489 U.S. 705, 711 (1989) (quoting Pereira v. United States, 347 U.S. 1, 8 (1954)). There must be a connection between the execution of the fraud and the mailing, though. Parr v. United States,

6

363 U.S. 370, 389-90 (1960).  Consequently, mailings that are essential to the fraud scheme clearly meet the "furtherance" requirement.  Schmuck, 489 U.S. at 714-15.

### III.  EVIDENTIARY ISSUES

1.	Admission of E-mail

E-mails containing statements made by the defendant and others have been authenticated through the certification process of Rule 902(11).

Before the e-mails can be admitted into evidence, any applicable hearsay issues must be disposed of.  In this case, the government intends to offer e-mails authored by defendant to Matt Menghini, a partner at McCarthy, Leonard and Menghini's replies regarding defendant's request for the firm to hire his niece.  In addition, the government seeks to introduce e-mails between defendant and an employee at Sunset Country Club.  And finally, a series of e-mails between defendant and various individuals, some who will testify at trial and some who will not.

Those witnesses that testify whose e-mail communications with defendant are to be admitted will have personal knowledge of the event, in which case the admission requirements, when combined with the e-mail certifications, are complete for admission as business records. E-mails may be admitted as business records when:  1) they are recorded in any form; 2) set forth act, events, opinions, etc.; 3) are made at or near the time of the event; 4) made by a person with knowledge; 5) kept in the course of regularly conducted business activity; and 6) it was regular business activity to maintain the e-mails. EVIDENCE AT THE ELECTRONIC FRONTIER: INTRODUCING E-MAIL AT TRIAL IN COMMERCIAL LITIGATION, 29 Rutgers Computer & Tech. L.J. 219, 226 (2003).  Any e-mail chains that are embedded within those e-mails are also admissible absent any specific showing of alteration.  United States v. Safavian, 435 F. Supp. 2d 36, 41 (D.D.C. 2006).  See United States v. Harvey, 117 F.3d 1044, 1049 (7th Cir.

7

1997) (e-mail's genuineness and probative value left to jury after prima facie showing of authenticity).

For those e-mails introduced without a testifying participant, the statements in the e-mails that are directly attributed to the defendant are not hearsay and are properly admitted pursuant to FRE Rule 801(a)(2)(A) as party-opponent admissions. United States v. Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006). Statements from others in those e-mails "provide context for the defendant's statements and are not introduced for their truth." Id. at 44; United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000); United States v. Burt, 495 F.3d 733, 739-40 (7th Cir. 2007).

2. Summary Charts

The government intends to employ the well-established and customary practice in criminal cases of submitting summaries of evidence. The government will call to the stand Denise Thompson and Matt Villicana who will introduce into evidence summaries that will be prepared based on the government exhibits. These witnesses will be asked to summarize documents obtained by subpoena and search, various banking records, and situational events and then these summaries will be offered into evidence. The practice of using summaries in criminal trials has long been held proper. United States v. Johnson, 319 U.S. 503, 519 (1943); United States v. Lewis, 759 F.2d 1316, 1329 #6 (8th Cir. 1985); United States v. King, 616 F.2d 1034, 1041 (8th Cir. 1980).

The use of summaries involving embezzlement is particularly appropriate because the jury is being asked to absorb and understand large numbers of exhibits containing financial information. As Federal Rule of Evidence 1006 provides:

8

> The contents of voluminous writings … which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time or place.  The Court may order that they be produced in Court.

The government anticipates that all information upon which its witnesses rely will be admitted into evidence.  However, the witnesses will summarize and analyze this information in order to assist the jury.  Assumptions made in the government's charts "are permissible as long as supporting evidence has been presented previously to the jury … and where the court has made it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence."  Means, 695 F.2d 811, 817 (5th Cir. 1983).  Any summary witness offered during trial will offer opinions as to her analysis as provided by Federal Rule of Evidence 701.

    Respectfully Submitted,

    RICHARD G. CALLAHAN
    United States Attorney

    */s/ John J. Ware*
    JOHN. J. WARE, #40880MO
    Assistant United States Attorney

    */s/ Dianna R. Collins*
    DIANNA R. COLLINS, #59641MO
    Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 30, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                          */s/ John J. Ware*
                                          JOHN J. WARE, #40880MO
                                          Assistant United States Attorney

                                          */s/ Dianna R. Collins*
                                          DIANNA R. COLLINS, #59641MO
                                          Assistant United States Attorney